UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BLANCA E. GALVAN,                )    Case No. CV 11-7260 JC
                                 )
              Plaintiff,          )
                                 )    MEMORANDUM OPINION
       v.                        )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security,                        )
                                 )
              Defendant.         )
_____)

I.     **SUMMARY**

       On September 7, 2011, plaintiff Blanca E. Galvan ("plaintiff") filed a

Complaint seeking review of the Commissioner of Social Security's denial of

plaintiff's application for benefits.  The parties have consented to proceed before a

United States Magistrate Judge.

       This matter is before the Court on the parties' cross motions for summary

judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

Court has taken both motions under submission without oral argument.  See Fed.

R. Civ. P. 78; L.R. 7-15; Sep. 13, 2011 Case Management Order ¶ 5.

///

1

1   Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3   ("ALJ") are supported by substantial evidence and are free from material error.[1]

4   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5   **DECISION**

6   In March 2009, plaintiff filed applications for Supplemental Security

7   Income and Disability Insurance Benefits.  (Administrative Record ("AR") 10,

8   146, 154).  Plaintiff asserted that she became disabled on January 30, 2005, due to

9   epilepsy.  (AR 190).  The ALJ examined the medical record and heard testimony

10  from plaintiff (who was represented by counsel) and a vocational expert on June

11  16, 2010.  (AR 29-83).

12  On July 30, 2010, the ALJ determined that plaintiff was not disabled

13  through the date of the decision.  (AR 17).  Specifically, the ALJ found:

14  (1) plaintiff suffered from the following severe impairments:  history of seizure

15  disorder, obesity and hyperlipidemia (AR 13); (2) plaintiff's impairments,

16  considered singly or in combination, did not meet or medically equal a listed

17  impairment (AR 13); (3) plaintiff retained the residual functional capacity to

18  perform medium work (20 C.F.R. §§ 404.1567(c), 416.967(c)), but with additional

19  limitations (*i.e.*, plaintiff could not climb ladders, ropes or scaffolds, and could not

20  be exposed to heights or hazards) (AR 13); (4) plaintiff could not perform her past

21  relevant work (AR 15); (5) there are jobs that exist in significant numbers in the

22  national economy that plaintiff could perform, specifically housekeeper, cashier II,

23  and parking lot attendant (AR 16-17); and (6) plaintiff's allegations regarding her

24

25  ───────────────

26  [1]The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196

27  (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

28  application of harmless error standard in social security cases).

limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 14).

The Appeals Council denied plaintiff's application for review.  (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.     Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///
///

1          (4)     Does the claimant possess the residual functional capacity to

2                    perform claimant's past relevant work?  If so, the claimant is

3                    not disabled.  If not, proceed to step five.

4          (5)     Does the claimant's residual functional capacity, when

5                    considered with the claimant's age, education, and work

6                    experience, allow the claimant to adjust to other work that

7                    exists in significant numbers in the national economy?  If so,

8                    the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ Properly Evaluated the Medical Evidence

#### 1.   Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

---

[2]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

## 2.    Analysis

Plaintiff essentially contends that the ALJ (1) failed adequately to evaluate the medical evidence with respect to plaintiff's seizure disorder; (2) improperly rejected the findings of two MRI examinations of plaintiff; and (3) failed properly to develop the record by not calling an expert in neurology to testify at the hearing as to the severity of plaintiff's impairments.  (Plaintiff's Motion at 3-4).  A remand or reversal is not warranted on any of these grounds.

First, the ALJ's residual functional capacity determination accounted for all significant probative evidence of plaintiff's limitations related to her severe seizure disorder.  The ALJ stated that he carefully considered "the entire record" in accordance with administration regulations.  (AR 11-14).  The ALJ noted that in 2003 plaintiff's treating doctor indicated that plaintiff's seizure disorder was controlled by medication.  (AR 14) (citing Exhibit 1F at 9 [AR 240]).  In January 2008, plaintiff reported to her doctor that she was not having seizures, and on examination her doctor determined that plaintiff had a 5/5 on motor strength in all

6

of her extremities with no neurological or sensory problems.  (AR 14) (citing Exhibit 1F at 26 [AR 257]).  In August 2008, plaintiff was diagnosed with seizure disorder, but on examination she had a normal gait and 5/5 motor strength globally.  (AR 14) (citing Exhibit 8F at 12 [AR 331]).  The ALJ also noted objective testing which reflected that (1) in September 2004 plaintiff had a "normal electroencephalogram (EEG), with no epileptiform potentials seen"; (2) in February 2008, an MRI of plaintiffs brain "only showed bilateral foci of white matter hyperintensity most prominent in the subcortical regions, but no evidence of mesiotemporal sclerosis, hypoplastic maxillary sinuses with maxillary, ethmoid, or left frontal sinus disease"; and (3) an August 2008 MRI "only showed mild periventricular deep white matter disease likely microvascular ischemic changes, as well as a two-millimeter right coronal radiate lacune."  (AR 14) (citing Exhibits 1F at 51 [AR 282]; 8F at 62, 65 [AR 381, 384]).

        In addition, although treatment notes reflect that in April 2009 plaintiff's seizures were uncontrolled, the ALJ concluded that plaintiff's seizures had subsequently been brought under control in light of plaintiff's testimony that (1) the seizures had decreased from three/four each week a year prior to only one per week during the two months before the hearing; and (2) she had started taking Depakote in the "past year" in addition to her prescription of Phenobarbital.  (AR 14) (citing AR 58-63; Exhibits 8F at 28 [AR 347]; 9E at 4 [AR 217]).  The ALJ also found that plaintiff was "being . . . treated conservatively . . . only with medication," and concluded that "to warrant finding additional physical restrictions, [one] would expect to see more treatment, additional objective clinical findings of significance, and observations of more restrictions by [plaintiff's] examining doctors."  (AR 14).  In light of the foregoing evidence, it was reasonable for the ALJ to conclude that any physical limitations from plaintiff's seizure disorder were adequately accounted for in the ALJ's residual functional capacity assessment which, among other things, precluded plaintiff from climbing

1   ladders, ropes or scaffolds, and working around heights or other hazards.  (AR 14).

2   While plaintiff suggests that the record shows otherwise (Plaintiff's Motion at 4),

3   this Court will not second-guess the ALJ's reasonable interpretation of the medical

4   evidence, even if such evidence could give rise to inferences more favorable to

5   plaintiff.  Robbins, 466 F.3d at 882 (citation omitted).

6   　　　　Second, the Court rejects plaintiff's contention that a reversal or remand is

7   warranted based on the ALJ's evaluation of reports from MRI examinations of

8   plaintiff's brain on February 5 and August 13, 2008 (collectively "MRIs").  In

9   short, plaintiff merely disputes the ALJ's reasonable interpretation of the objective

10  medical evidence, which is, nonetheless, solely within the purview of the ALJ.

11  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (citing Magallanes,

12  881 F.2d at 750).  Even assuming, as plaintiff argues, that the ALJ improperly

13  "minimized the findings" in the MRI reports without the benefit of a supporting

14  medical opinion (Plaintiff's Motion at 4), the Court finds no material error,

15  particularly when the ALJ's evaluation of the MRIs is viewed in the context of the

16  other substantial evidence noted above which supports the ALJ's residual

17  functional capacity assessment.  Moreover, plaintiff fails to demonstrate that the

18  functional limitations assertedly called for the MRIs were not already accounted

19  for in plaintiff's residual functional capacity assessment.

20  　　　　Finally, the Court rejects plaintiff's contention that the ALJ failed properly

21  to develop the record by not calling "a medical expert in the field of neurology" to

22  testify as to "the severity of plaintiff's impairments."  (Plaintiff's Motion at 3).

23  Although plaintiff bears the burden of proving disability, the ALJ has an

24  affirmative duty to assist a claimant in developing the record "when there is

25  ambiguous evidence or when the record is inadequate to allow for proper

26  evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

27  2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb v. Barnhart,

28  433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop

8

record and to assure that claimant's interests are considered).  Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination.  See 20 C.F.R. §§ 404.1519a, 416.919a; Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (citing id.; 20 C.F.R. §§ 404.1517-1519t, 416.917-919t); Carrillo Marin v. Secretary of Health and Human Services, 758 F.2d 14, 17 (1st Cir. 1985) ("[I]f the Secretary is doubtful as to the severity of [a claimant's] disorder the appropriate course is to request a consultative evaluation. . . ."); see also Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991) (decision to order consultative examination rests within ALJ's discretion) (citation omitted).

Here, as plaintiff concedes (Plaintiff's Motion at 3), the ALJ did not state that the medical evidence was ambiguous or that the record was otherwise inadequate to allow for proper evaluation of plaintiff's disability.  Consistently, as discussed above, substantial evidence (including records from plaintiff's treating physicians) supported the ALJ's disability determination.  Moreover, at the hearing, plaintiff's attorney argued, in effect, that the current medical record was sufficient to reach a disability determination.[3]  (AR 82).  Plaintiff's conclusory assertion that the record was "incomplete" is inadequate to trigger the ALJ's duty to develop the record.  See Reed, 270 F.3d at 842 ("The government is not required to bear the expense of [a consultative] examination for every claimant.") (citations omitted).

Accordingly, a remand or reversal on this basis is not warranted.

///

---

[3]Although, as plaintiff points out, plaintiff's attorney complained at the hearing that a doctor had not reviewed the record medical evidence (Plaintiff's Motion at 3) (citing AR 82), the attorney did not argue that this fact precluded the ALJ from reaching a disability determination. (AR 80-82).  To the contrary, counsel suggest just the opposite by arguing "[w]e believe that the evidence supports a finding that [plaintiff] is disabled."  (AR 82).

**B.    The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints.  (Plaintiff's Motion at 5-6).  The Court disagrees.

### 1.    Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons.  Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal

contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p.  Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment.  Burch, 400 F.3d at 681.

## 2. Analysis

First, an ALJ may properly consider a plaintiff's failure to "follow a prescribed course of treatment" in assessing her credibility.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, as the ALJ noted, treatment records reflect plaintiff's "poor compliance" with taking prescribed medication.  (AR 15) (citing Exhibit 8F at 28 [AR 347] [plaintiff "not been compliant with Depakote" and "decreased dose on her own"]; Exhibit 8F at 45 [AR 364] [plaintiff "afraid to increase dose" of prescribed medication; "poor compliance"]).  While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), plaintiff has not presented such a sufficient reason.

Second, the ALJ properly discredited plaintiff's subjective complaints in part because they were inconsistent with plaintiff's daily activities.  See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  For example, the ALJ noted that plaintiff stated she goes

///

///

11

grocery shopping, cleans the house, lifts a trash can, and washes dishes.[4]  (AR 15)
(citing Exhibit 6E [AR 205-07]).  The ALJ stated that such activities suggest
plaintiff "has a greater [functional] capacity . . . than [she] alleges."  (AR 15).
While plaintiff argues that her daily activities do not "equate[] with the ability to
perform work on a sustained basis," this Court will not second-guess the ALJ's
reasonable interpretation that they do, even if such evidence could give rise to
inferences more favorable to plaintiff.

Finally, the ALJ properly discredited plaintiff's subjective symptom
testimony due, in part, to the absence of supporting objective medical evidence.
Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain
testimony cannot be rejected on the sole ground that it is not fully corroborated by
objective medical evidence, the medical evidence is still a relevant factor in
determining the severity of the claimant's pain and its disabling effects.") (citing
20 C.F.R. § 404.1529(c)(2)).  Here, as discussed above, the ALJ essentially found
that (1) plaintiff had been receiving only conservative treatment (i.e., medication
only) for her seizure disorder; (2) plaintiff's seizures were controlled when
plaintiff was compliant with her prescribed medication; and (3) the record does not
reflect "additional objective clinical findings of significance" or "observations of
more restrictions by [plaintiff's] examining doctors," or that plaintiff sought
additional treatment – at least some of which would be expected in light of

---

[4]In the decision, the ALJ stated that "[plaintiff] reported that she goes grocery shopping,
cleans the house, lifts a trash can, and . . . washes dishes." (AR 15) (citing Exhibit 6E [AR 205-
07]). Plaintiff contends that the ALJ mischaracterized her daily activities, because plaintiff's
exertional questionnaire purportedly "shows that the plaintiff does not do her own grocery
shopping, nor clean her home without the assistance of her husband." (Plaintiff's Motion at 6)
(citing AR 206). Nonetheless, although plaintiff stated in her exertional questionnaire that she
would go with someone to the store, and that her husband would help clean the house, plaintiff
also stated that she personally was able to vacuum, wash dishes, and carry groceries. (AR 205-
06). Accordingly, the Court finds any error in the ALJ's characterization of plaintiff's daily
activities to be immaterial.

1  plaintiff's alleged disabling symptoms.  (AR 14); see Bunnell v. Sullivan, 947

2  F.2d 341, 346 (9th Cir. 1991) (en banc) (In assessing credibility, the ALJ may

3  properly rely on plaintiff's unexplained failure to request treatment consistent with

4  the alleged severity of her symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th

5  Cir. 1999); see also Fair, 885 F.2d at 604 (ALJ permissibly considered

6  discrepancies between claimant's allegations of "persistent and increasingly severe

7  pain" and the nature and extent of treatment obtained).

8        Accordingly, a remand or reversal on this basis is not warranted.

9  **V.    CONCLUSION**

10       For the foregoing reasons, the decision of the Commissioner of Social

11  Security is affirmed.

12       LET JUDGMENT BE ENTERED ACCORDINGLY.

13  DATED:   March 21, 2012

14                                   _____/s/_____

15                                   Honorable Jacqueline Chooljian

16                                   UNITED STATES MAGISTRATE JUDGE

13